Leonel Ivan Bonilla-Cruz versus Merrick B. Garland. Oral argument not to exceed 15 minutes per side. Counsel Frag, is that correct? For the petitioner. Good afternoon. Good afternoon. I'd like to reserve three minutes for rebuttal. Very well. Good afternoon, your honors, and may it please the court. Donna Farrick on behalf of petitioner Mr. Leonel Bonilla-Cruz. This is a case where the agency failed to do its work and satisfy its obligations under its regulations and this court's directives. For both the Convention Against Torture and cancellation of removal claims, the IJ and BIA failed to meaningfully grapple with uncontested facts and conduct the required analyses. First, for the CAT claim, the agency failed to consider the impact of changed country conditions and the unrebutted reports, including State Department reports, that accused gang members are being detained and tortured in El Salvador. That failure is compounded by the fact that neither the IJ nor the BIA grappled or analyzed the recent evidence that is specific to Mr. Bonilla-Cruz. This evidence includes that DHS and the GEO group identified him as a member of MS-13 and the information sharing agreement between El Salvador and the United States. Two, evidence of torture against similarly situated persons, including individuals who, like Mr. Bonilla-Cruz, are not gang members and were tortured by government officials to coerce a confession. Thank you for taking this case, by the way. So for those, those are his two kind of colleagues from before when he was in El Salvador. They were acquaintances from his hometown. I believe he knew them growing up. I don't know that they were colleagues. Okay, I don't mean that. Did your client argue those points in the IJ or BIA before the administrative bodies? He argued that in AR, his testimony at AR 130 to 138 refers to acquaintances in his hometown broadly. He notes that there are people that he knew growing up that have been detained and that he's recognized have been mistreated. There are specific... Generally, or those two individuals specifically? There's a bit of ambiguity there, but then he does also talk about those two individuals that he's associated with, affiliating with, and he's worried that they had given up his name or something. He doesn't know if they're gang members, but he knows, based on the arrest warrant, that he's accused of affiliating with them and that they have been detained. And his argument is, they've given up my name. I'm accused of affiliating with them. This is precisely what El Salvador does. It tortures anyone remotely affiliated with gang members. And there's the evidence of his hometown in particular is a low-income area. Those areas have been targeted under the state of exception. Is your client a gang member? He is not. He's maintained he's... So he's not a gang member. So the concern is that the country tortures gang members. I mean, it's a sort of funny thing because the problem before was there were too many gang members. And you would say, if you're a gang member, you can't go back. Or the government won't control the gangs. Now we're saying the government's controlling the gangs too much, I guess, by torturing them, which they shouldn't do. But your client's not a gang member. My client is accused of being a gang member. He maintains he's innocent. But the problem is that the country isn't just accusing gang members. It is accusing anyone affiliated or... Sorry, it's not just torturing gang members. It is torturing accused gang members. There's plenty of record evidence in the State Department report as well that it is torturing members who... Or people who are affiliated with gang members who know them. So he's affiliated with a gang member? Based on the arrest warrant and the names that are in there, he's accused of affiliating with... This is from 10 years ago? Or almost from 12 years ago? A long time? It's before... He says he wasn't there when this was issued, right? Yes. He says he was not there at the time of the incident, and he maintains his innocence that way. But the other recent evidence that has not been considered by the IJ or BIA is the fact that while he was here in the United States and detained, the GEO group issued a memo naming him as a member of MS-13 and found that he has the moniker La Iguana. The DHS documents contain information saying he's a member of MS-13. Those would be determinations made by the courts in El Salvador. There's an allegation... There's an arrest warrant out. He's being held there. But he has to go through process in that country. Agreed. And the problem is there is no process. That is what the State Department report is saying is, look, the problem is anyone who is remotely has an affiliation with... That's a broad argument you're making. That's a lot of people. None of those people can be sent back. I mean, it's got to be a little bit individual. We're not making that argument. We're making the argument that the IJ and BIA didn't grapple with that at all. There's no acknowledgement of what the state of exception means, what it means for some... The IJ acknowledged or found that he's likely to be detained. And then the IJ concludes, but based on evidence five years ago before the state of exception, that he's likely to be released quickly. That needs... That determination does not account for the country conditions. It does not account for evidence and reports in the State Department reports and human rights reports that access to counsel has been suspended. So if he's likely to be detained based on the evidence now, he's not likely to find counsel. Pre-trial detention has been expanded, suspended, and the ability to have a fair trial has been suspended. And that people have been... That the government has been coercing confessions from innocent individuals. None of that was acknowledged. Our argument is that the IJ and BIA needed to make those findings first. They needed to determine once he's detained, what happens to him in prison and is that torture? And needs to grapple, meaningfully grapple with the country conditions and that the reports that Mr. Bonilla-Cruz has submitted. That is not in the record anywhere. He's been removed already, right? That's correct, Your Honor. What effect does that have on what we're doing here? Is he in jail now or do you know anything about it? The last we heard that he is, that he has been detained and is in a prison, an Izalco prison, which has been... Is in the reports as a place where people have gotten tortured. That was the last we heard at the time of filing this brief. If he wins now, what does he do? He's just locked up over there anyway? There is, as I understand it, an ICE directive that if this gets remanded and the agency needs him for further consideration or if he prevails, that the United States is to ... It's still a significant issue. But I understand the concern about are we opening the door for anyone who's remotely affiliated with Associated News? I want to understand what you're saying about the allegation of his gang affiliation. You said his name appeared on some list. That list was from El Salvador. What list were you referring to there? There's a warrant out for his arrest. While he was in El Salvador, he was stopped by the police and questioned a few times. There was a summons out for him when he left. There was an active arrest warrant. Then when he came to the U.S. Before you go to that, an arrest warrant. Did the arrest warrant identify him as a gang member or not? It identified ... The crime was for extortion and in connection with bringing money for a gang. The alleged associates in that warrant have been detained and accused of being part of a gang. He was not designated in that warrant as a gang member, right? I don't believe it specifically says that in the warrant. The crime of extortion is what they have been using to target gang members. Okay. Subsequently, in the U.S., what identification was made of him as past a potential gang member here? One of the DHS Forbes notes that El Salvador has him identified as a gang member. Then while he was detained in, I believe it was Pennsylvania, the GEO group that was maintaining the facility had ... There is a memo and it had concerns about MS-13 activity and it named him as a member of MS-13. It said essentially that his gang nickname was ... Okay. These were U.S. actors or authorities that mentioned or identified him as affiliated with gangs ... Yes. ... but they didn't do any investigatory work or anything like that to identify him to arrive at that designation. He was just put onto a list possibly with other peoples similarly designated. I believe the memo that's in the record names him only, but I don't know about the extent of ... These were U.S. people who were doing that. That is correct. This is important, though, because there's an information sharing agreement between El Salvador and the United States. This information about his criminal record or about his suspected record is what goes over to El Salvador. Yes, but that's not helpful unless we know that there was collaboration between these U.S. individuals and the El Salvador people. The fact that there's a sharing agreement of ... Unless the information was shared specifically pertaining to your client ... Yes. ... unless there's some evidence of that, the fact that such an agreement exists doesn't get us very far. This is a practice that the United States has been doing, but at the very least, the IJ or BIA didn't consider that at all. There's this recent evidence where the U.S. government is accusing him of being a gang member. That information is going to be relayed to El Salvador, and neither the IJ nor the BIA contended with that at all. They acknowledged, the IJ acknowledged he's likely to be detained. She acknowledged that there's enough in there ... Well, do we have any evidence or information suggesting that information was transmitted to El Salvador? I can't speak to what the U.S. has transmitted. I can speak to what the record says, which is this information is likely to get transmitted. There is an information sharing agreement, and even apart from that ... So a lot of this is pretty speculative, don't you think? I don't think so, Your Honor. I think you've got, and again, at the very least, you needed the IJ or the BIA to make these factual findings about Mr. Bonilla Cruz's position. I mean, the government has been arguing in its briefs that he is a gang member, that he's an accused gang member. There's been no contention that he's not likely to be identified as such. I take the government's argument to be he's unlikely to be tortured, but I don't know how you get to that conclusion when the IJ and BIA never engaged in an analysis that took into account the regulatory factors that this Court has time and time again said need to be considered, including evidence of widespread violations. If the IJ has already found that he's likely to be detained, the question is what happens next. Is he likely to be tortured? Yeah, I mean, the BIA opinion says we acknowledge reports of human rights violations in El Paso prisons. It says these reports aren't enough to show there's a particular threat to your client. So this Court has held that conclusory statements like that are not sufficient. This was in precatography sessions. But the reason it's insufficient is because it does not give you the why. It doesn't allow the Court to meaningfully engage with how it got to that conclusion, if I may be permitted to respond. One, human rights abuses does not necessarily equal torture. So it's not clear whether the BIA was acknowledging that torture happens. It doesn't grapple with how widespread it is. It doesn't grapple with who is likely to be tortured. Because the evidence in the State Department report, and it's important because this is an arm of the U.S. government saying accused gang members are tortured in prison, and to not then engage with that at all and explain how it then got to the conclusion that Mr. Bonilla-Cruz, who's an accused gang member, and there are these credible... He's accused by these reports, I guess. But El Salvadorian government can make their own determination about whether they think he's a gang member. He's entitled to some process there. And the two, I think it's well known that many gang members have tattoos. I think his two associates had tattoos. He does not have a tattoo, correct? That's correct. But the mere acknowledgement of human rights abuses does not mean that it actually considered torture. And I would just refer to the Court to precatography sessions, where at least there, the BIA listed the government's evidence and then said the petitioner did not meet his burden. And this Court said, you need to give us the why. How did you get there? And in that case, the government had introduced contrary evidence. And still, this Court said, BIA, you have to tell us which evidence you found to be more compelling and why. You can't just resort to bald conclusory... A lot of steps to your argument, I think. You have to say that he's going to be held, he's going to be falsely accused as a gang member, he's going to be concluded to be a gang member, and then he's going to be tortured. We have to find every one of those steps to find... Or the IJ or the BIA would have to find every one of those steps to find... Well, I think the IJ already made some of those findings. It did find that he's likely to be detained because of the pending arrest warrant. That finding has been made. Well, the IJ also found it's likely that his lawyer would be able to get him out of prison. But the problem with that is that did not account for recent country conditions at all. And that's our argument. This is what this Court has said time and time again, that the BIA and IJ need to account for country conditions. Well, I read you the line that said that they did account for country conditions. So that was the BIA. The IJ's finding was he's likely to be released based on the testimony of an attorney, an attorney we know nothing about. But in that context, the IJ needed to assess what the country conditions mean once someone is detained. Because the evidence that the attorney theoretically could help him out is out the window with the state of exception. The state of exception suspends the right to counsel. So to be citing something that happened five... A hearsay statement from five years ago without acknowledging the state of exception suspends the right to counsel, extends pretrial detention, that the State Department in its own travel advisory to U.S. citizens has said El Salvador's acting arbitrary and constitutional procedures have been suspended. You've got to acknowledge that somewhere. You can't rely on something... All these arguments were made to the BIA? Or are they being made now? These arguments were made to the BIA. The BIA, our position has been that the BIA should have remanded because the IJ's analysis focused primarily on a theory that Mr. Benia-Cruz did not advance, which is that he would... Whether he was likely to be tortured by gangs. And we made this argument to the BIA and said this warrants remand. The BIA sort of dodged that and said, well, we've applied our own analysis. And this is faulty for a few reasons. One, the BIA can't make its own factual findings. It reviews only for clear error. And two, if it's limiting itself to the factual findings that the IJ made to an incorrect theory, then this is exactly our argument. You need to consider our theory, the arguments Mr. Benia-Cruz made, and analyze the country conditions in light of what the government is likely to do to Mr. Benia-Cruz. So that means that every case that comes up with this kind of issue, that the immigration judge or the BIA has to analyze country conditions in each and every case? I think where there is evidence, and particularly of country conditions, and yet this is not the court is not breaking new ground by saying this. This is what it has said repeatedly. Abdelahad Vibar, Prakitaj V. Sessions, Juan Pedro, there's a line of cases where this court has made clear time and again you have to consider country conditions. And when the State Department reports are in there, it's particularly egregious not to. So yes, that is what this court has said. Now, it doesn't have to write a whole treatise on them, but it has to at least acknowledge what is going on in the country and how it is likely to impact the individual who's claiming he's going to be tortured. And the regulatory factors are, which again this court has said need to be considered, the IJ and BIA need to look at how the country conditions bear on things like widespread mass violations, inability to relocate, similarly situated individuals may be tortured. But let me ask you this, how extensively is the immigration judge or the BIA required to discuss country conditions? This court has said enough to be able to glean that the BIA or the agency has really thought through the issues and not merely reacted. And so I think one way is simply to say the problem is here we don't have anything. We don't have that the human rights violations that are in there amount to torture or that they are widespread or that they are simply isolated instances. There has to be, it has to be grounded in the regulatory factors. So if the country conditions say there is widespread evidence of torture in prisons, the BIA has to contend with that. It can say something like well it may or may not have been targeted against individuals with this character trait, but it has to ground it in the regulatory factors. It can't simply jump to the conclusion that it's not sufficient. Can I ask you, so is, can the U.S. ever remove an MS-13 gang member to El Salvador? In your view? Telling what you know about all the country condition reports? In my view, yes, but the court doesn't have to contend with that now because... Oh no, no, this is, no. What if we did? I mean, it's to me, I'm hearing your argument as saying we can never remove an MS-13 member to El Salvador because they're likely to be tortured. We have to keep them all in the United States. I'm saying first there isn't a meaningful analysis that was done by the BIA and IJ. But in the plaintiff's opinion, we're going to have to say things about these topics and so it'll be the next case that we'll want to build on this case and I'm trying to look down the road a little bit. And I think, I understand that concern. I think the reason the IJ and BIA analysis matters in the first instance is we have to understand how it got there. Maybe there's a world... You're saying he's a gang member. I'm saying he's accused of being a gang member. So I think there are instances where, one thing this court has looked at in the past is, is this person actually likely to be identified by the government? And here, because you have the arrest warrant, because you have the DHS memo, that person is going to be on the government's radar. If someone was living in El Salvador and there's no evidence that the government really had their eye on him, that's a different situation. But I think, I think because of the unique situation in Mr. Bonilla-Cruz, this is all the court has to contend with at this moment is he is accused. He maintains his innocence. Innocent people in his hometown and across the country have been detained and interrogated and tortured to coerce a confession. And that's what he falls under. You can focus on a narrower bucket and leave sort of the bigger question for down the road, but I don't... In the first instance, the IJ and BIA needs to conduct the analysis. All right. Thank you very much. We'll hear from the government. Thank you, Honors, and may it please the court, Stephanie Groff for the Attorney General. Your Honors, my friend on the other side argues that the agency here jumped to conclusions, whereas her herself and her arguments is jumping to so many conclusions and is speculative and is not supporting the evidence that it should be compelled and change what was found below, specifically as it relates to cat protection. Here, Mr. Bonilla-Cruz has failed to meet his burden of proof that he is more likely than not to be tortured if removed. And with that, under this court's precedent, he needs to demonstrate a particularized threat of torture. And here, that is not the case. While my friend on the court argued respectively that the agency here didn't grapple with the evidence, it didn't address the factors, that is not supported by the evidence. In fact, as all of you judges have noted, the immigration judge stated that it was addressing the country conditions. In fact, the immigration judge stated that it was considering all evidence, both the testimony and in the record. And the board also acknowledged country conditions evidence, specifically with certain human rights violations. So your friend on the other side cited quite a few, you know, studies, different kinds of reports. Do you take issue with any of the ones that she cited or their conclusions? Well, none of them were contested by the government below. I would just note that the standard is for cat protection, substantial evidence. So she needs to demonstrate that the record this court today compels a contrary conclusion. The government does not contest that there is a state of exception happening in El Salvador, as recognized by both the immigration judge and the board. And there is evidence of instances of torture in various prisons. But overall, this is not enough to show that Mr. Benia-Cruz himself has this particularized threat. And importantly, the definition of torture does not encompass everything that my friend on the other side has said. Yes, it is a bit concerning that they have suspended certain judicial rights and there's not as easy access to counsel. The evidence in the record does show that the state of exception occurred based on a constitutional amendment that El Salvador has to suspend these rights in a state of emergency. There was a period of a few days where MS-13 gang members murdered over, I believe, 60 to 90 people. And therefore, the president, Bukhali, at the time decided to enforce this state of exception. There was a legislative movement also that taking constitutional rights or taking something from the constitution to create the state of exception. And yes, it is a bit concerning with evidence of overcrowding and some of the conditions in these prisons. But that's not enough to necessarily mean that Mr. Benia-Cruz himself will be tortured. Tortured is severe pain or suffering with a specific intent. Can I ask you, there's kind of two parts to these cases. There's one, like the generalized conditions. Is there a risk? And then there's this specific individual. Will they be subjected to the likelihood of those risks that are sort of generalized? Yes, your honor. So on this specific individual, petitioner, does the government think he's a gang member? And is the government's position that he is a gang member? And can you tell us like what information the government would convey to the state of El Salvador and how this all plays out? There's just a lot of sort of... I'm not sure all these points were as well developed in the administrative part as they're well developed now. But so I'm just having trouble kind of putting it all together as to this individual. Yes. Well, and first the government would state that, well, my friend on the other side said that it would be necessary to send it back. Because the agency didn't grapple with this, we would argue that that is not necessary. Again, the agency said that it considered all the record evidence in which there is information about information sharing. But the issue here, they focus more on the particularized threat. But as to whether the government believes that Mr. Bonilla Cruz is a gang member, while he testified he is not and he's never been associated, what the evidence shows is that there was this extortion crime that he was charged with back in 2013. He's been aware of it since then. And with that, subsequently, a judge in El Salvador sought a summons for his arrest. The evidence does show that there's information sharing and it is well documented and known through El Salvador and the United States government. And in the I-213, which is the Department of Homeland Security's document, it states that El Salvador itself has recognized him as a gang member. As far as the GEO complaint, that was based on Mr. Bonilla Cruz's time in a contracted facility in the United States. And he was amongst many who were accused of a MS-13 uprising. The specific document, you can see, has lines for multiple people, but the one submitted only stated Mr. Bonilla Cruz. Taking that in the totality, the government and opposing counsel, no one is necessarily contesting that El Salvador may believe that he is a gang member. But as you noted, Judge Riedler, El Salvador has systems in place to figure out if someone is or is not a gang member. It is a crime to be associated with gangs in El Salvador. Whether or not someone is prosecuted for a crime, whether it's his extortion or his potential terrorist ties to a gang member, that is for El Salvador to do. And this court cannot jump to the conclusion that that will obviously and must be torture. What can happen and what the country conditions show is, yes, these cases are taking a long time. In fact, Mr. Bonilla Cruz himself testified that he could be released in maybe one to two years because he is not a gang member. But eventually, going before a court to say that you're innocent, to say you don't have any ties to gangs, and also he has no tattoos, he's testified to that, he's never in his own testimony been associated, he can go before a court to let them know that and let the court process happen and subsequently be released. The El Salvador country conditions note that there have been people that have been released, albeit a smaller number, but over the time, I believe one states that 5,000 had been released in the year process. Again, it is El Salvador's responsibility as a country and it's not this court's responsibility to claim that he would automatically be tortured just by being identified as a gang member. What effect is this fact that he's been removed already? Where does that fit into it? Yes, Judge Schuyler, and I know you asked my friend on the other side, so I'd just love to clarify with you. All we know now based on my friend on the other side's brief and what she stated before is after this court had denied his request for a stay of removal, ICE subsequently removed him to El Salvador and El Salvador officials did detain him and he is now in prison. If this court were to re-band, there are agreements that ICE has with other countries about facilitating a return. The problem we have here is there is a warrant for his arrest. He is lawfully, as the government is aware, in detention for a crime that while he claims he has not committed, the process needs to go forward. This is an old warrant from when he was there before? Is that what the warrant is? The warrant is, I'm referring to the 2013 warrant for the crime that took place in 2012, the extortion. We are not 100% sure that's why he was detained, but assuming that he was detained for lawful prosecution, which the agency, both the judge and the board, address that lawful prosecution and detention does not equate to torture. There's various case law on that. While the government obviously condones torture and would not want that, there's only so much we can do to facilitate a return if someone is in a proceedings in their home country. Ultimately, what we have here, whether he's assumed to be a gang member, which at this point the court can assume that El Salvador does believe he is one, there's evidence in that, what we have here is that particular threat of torture, severe pain or suffering, and he has not done that. I will note that the evidence related to his acquaintances, friends, all he testified, and it was not clear if he knew who from his acquaintances were actually in jail. He did say that he saw someone that he knew that had MS-13 ties on TV in jail and looked thinner. Assuming that that is torture is a large jump. That is not enough to demonstrate that people similarly situated to him are going to be tortured. Again, he has no tattoos. He says that he's never been affiliated with the gang, so he's not met his burden to show that this particular, more likely than not, this particularized threat that would rise to the level of torture. Well, if he wins this case, at least to get a remand, does he come back here or does he just stay down there? The government would attempt to talk to El Salvador to facilitate his return, but as I noted, because he is likely lawfully detained based on this arrest warrant, there's only so much we could do. But there is a chance that he may have already or will be subsequently released if he's able to argue his case, say that he's not a gang member. The judge noted that there's proof that he might not have even been in El Salvador during that time. Then the government would be able to help facilitate his return, but we cannot make assurances that that could happen almost immediately. But we would argue that remand is not necessary here because the board's decision specifically is supported by substantial evidence. The record does not compel a contrary conclusion. While there's evidence that it might support their side, that's not enough. Your friend on your side was critical of the BIA's decision and I don't think it's all unfair. There's only two or three sentences that really talk about the conditions, the studies and reports regarding the conditions in the country. The board says we acknowledge those but says generalized reports are insufficient to show the respondent faces a particularized threat of harm. Do you think that was enough? Was that enough? Did the BIA do enough homework to sort of satisfy whatever obligations you think it has to really digest those studies? Yes, the government does believe that that is enough. As noted in our brief, the agency doesn't need to write an exegesis on the country conditions. It does not need to grapple with every single piece of evidence. It is enough to say that yes, we acknowledge that there are these human rights violations that are occurring. Both the immigration judge and board address the state of exception, but ultimately here, Mr. Benia Cruz has not demonstrated this particularized threat and the board's decision focused on that. There's no particularized threat to him because he claims he's not a gang member. There's a possibility that he could be released. To jump to that, that he is then going to be tortured, is too much. The board didn't grapple with that. While it might not be the best board decision in the entire world, it isn't enough to remand for any error because there is none here. The record needs to compel a contrary conclusion and the record doesn't do that here and the agency acted properly. Importantly, I just want to note that if Mr. Benia Cruz is concerned about he claims changed country conditions, the country conditions that he submitted haven't changed. There is tons of evidence about El Salvador and the state of exception in the record. The changed country conditions, I believe my friend on the other side is stating, relates to when he talked to the attorney. That was one aspect of what the agency found that he did speak to this attorney and could be released. But again, there's this particularized threat finding that the board made that shows overall, yes, he may be able to be released, but he hasn't demonstrated that he would be sought out for that severe pain or suffering that rises to the level of torture. And with that, we would ask that you uphold the grant of CAT and while we did not discuss cancellation or removal, we would ask that you would deny that also. Thank you very much. Thank you. Any rebuttal? Just a few brief points, your honors. First, before you get to the discussion on the standard of review and substantial evidence, this court has a line of cases that says failure to consider evidence warrants remand. So we don't have to get to does this compel a contrary conclusion at this stage. And the cases I would point to are, as I mentioned, Prakitaj v. Sessions, Marcus v. Barr, Abdullahad v. Garland, Zometa Orejano v. Garland. Number of cases that say you've got to grapple with all the evidence and you've got to provide a non-conclusory response. Second, the government acknowledges there's no dispute he's likely to be detained and the government says, well, he may be detained once he may eventually be released once he goes through the process. The question is what happens for the time period that he is to be detained, whether it's a few days or one to two years. And the evidence indicates that accused gang members, even ones who maintain their innocence, are likely to be tortured. The problem with that two sentence, the two sentences in the BIA report, again, one, sounds like the BIA is doing its own fact finding there when the IJA didn't make any sort of process there. So that's a procedural error. But two, is that discussion of human rights abuses, it's not clear there whether the BIA found that there was torture in prison or didn't find that there was torture in prison. It's true that not all mistreatment or rises to the level of torture, but here what we have in the record is evidence that these were systemic violations, that the president of El Salvador was touting bad prison conditions as appropriate punishment for gang members. That's not negligence. That's intended to inflict punishment and satisfies the definition of torture. But the BIA did not contend with that at all. It did not contend with who is likely to be tortured at these prisons. Is the mistreatment or the abuse targeted at certain members? Is it targeted at gang members, accused gang members? That finding was not in there at all. There was no finding as to whether that mistreatment happens only in a few prisons or if it's widespread. The evidence certainly tells you it is widespread and across the country. And that's the problem we have, is those two sentences are bereft of any analysis. And it's so this court cannot glean how the BIA got to its conclusion. And that's why we're saying this warrants remand. Thank you. All right, thank you very much. The case is submitted.